Roger C. MILLER, Plaintiff,

v.

The WESTERN HILLS PUBLISHING COMPANY, a Division of Queen City Suburban Press, Inc., Defendant.

No. C-1-76-515.

United States District Court, S. D. Ohio, W. D.

June 12, 1978.

Thomas F. Phalen, Jr., Cincinnati, Ohio, for plaintiff.

Charles G. Atkins, Cincinnati, Ohio, for defendant.

## MEMORANDUM; ORDER

HOGAN, District Judge.

This case comes before the Court upon defendant's motion for summary judgment (doc. 11) and plaintiff's cross-motion for partial summary judgment. The Court has before it in the record:

1) The affidavit of Robert D. Hamontre, president of Queen City Suburban Press, Inc., (attached to doc. 11).

2) Defendant's answers to plaintiff's second set of interrogatories (attached to doc. 11 and to doc. 16).

3) The affidavit of plaintiff, Roger Miller (attached to doc. 16).

4) Defendant's supplemental answers to plaintiff's second set of interrogatories (attached to doc. 16).

5) Affidavit of Everett L. Rudisell, distribution manager of Queen City Suburban Press (attached to doc. 17).

Defendant publishes neighborhood weekly newspapers, circulation 89,000, all emanating from Cincinnati, Ohio. Plaintiff, a former employee of defendant, is suing under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, to recover alleged unpaid overtime compensation. Section 16(b) of the Act, 29 U.S.C. § 216 provides that an employee may sue his or her employer for violation of Section 7, 29 U.S.C. § 207(a)(1), the overtime pay provision.[1] Plaintiff seeks unpaid overtime compensation for a three-year or 156-week period from 1973 to 1976, plus liquidated damages under Section 16(b), and costs and attorneys' fees.

---

1. 29 U.S.C. § 207 reads in part:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise en-gaged in commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one -half times the regular rate at which he is employed.

Defendant has filed a motion for summary judgment on the ground that Section 7 relating to overtime pay applies only to employees engaged in "commerce," which is defined in Section 3(b) of the Act as interstate commerce, 29 U.S.C. § 203(b), and thus, that this Court lacks subject matter jurisdiction. Defendant argues that during the relevant time period, it only sporadically or occasionally distributed an insubstantial number of copies of its publications outside Ohio.

The following facts do not appear to be in dispute:

Since November, 1973, Queen City Suburban Press, Inc., has variously published about ten weekly newspapers in the Cincinnati area.[2] Affidavit of Robert D. Hamontre, paragraph # 3. Only one of those newspapers, the Western Hills Press, has at any time maintained regular subscriptions. *Ibid*, paragraph # 4. Since the other papers are simply delivered door-to-door in certain areas, *Ibid*, paragraph 4, of defendant's newspapers only the Western Hills Press has any out-of-state circulation.

Plaintiff was employed by the defendant as a news reporter from June 30, 1952 until June 10, 1977, mostly writing for only one publication, the Western Hills Press. Plaintiff's affidavit, paragraphs 2–3. Plaintiff is suing for overtime due from 1973 to 1976. Complaint, paragraph 8; complaint (prayer for relief), paragraph 4. The total number of weekly copies of any of defendant's newspapers published from November 2, 1973 to June 10, 1977, which defendant directly caused to be distributed outside the State of Ohio never exceeded 0.5% of the total circulation of all of defendant's publications at any time. Hamontre affidavit, paragraph 5. However, the percentage of the total subscription of the Western Hills Press which went outside Ohio was roughly 2.8% to 3.25% from November, 1974 to November, 1977. Defendant's supplemental answers to plaintiff's second set of interrogatories, paragraphs 11 and 14. In any case, the average weekly out-of-state circulation of the Western Hills Press from November, 1974 to November, 1977, was 300. *Ibid*, paragraph 12.

In 1976, 5.8% of the total advertising revenue earned by the Western Hills Press came from out-of-state advertising. For 1977 through the month of June, the percentage was 5.8%. *Ibid.*, # 16 and # 17. From November 3, 1973 to June, 1977, the Western Hills Press belonged or subscribed to two interstate news services and did some reporting on news events originating outside Ohio. *Ibid*, # 19 and # 25.

Defendant distributed its publications out-of-state primarily to former Hamilton County residents and residents temporarily residing beyond the county limits. Hamontre affidavit, paragraph 6. Defendant did not promote or actively seek subscriptions from out-of-state subscribers except for college students temporarily residing elsewhere than Hamilton County. *Ibid*, paragraph 7.

The parties agree that the Supreme Court has set forth the relevant jurisdictional test based on interstate commerce in *Mabee v. White Plains Publishing Co.*, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946). There the plaintiff sued in the New York courts under Section 16(b) of the Act for unpaid overtime compensation. The defendant was a daily newspaper with a circulation in the relevant time period of 9,000 to 11,000 copies, and out-of-state circulation of approximately 0.5% of the total amount. The question was whether the out-of-state business done by defendant constituted "commerce" under the statute, such that the prohibitions of the Fair Labor Standards Act applied. The Court noted that in Section 15(a)(1), 29 U.S.C. § 215(a)(1), Congress had made no distinction on the basis of the *volume* of interstate business. Thus,

(t)hough we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition (of the shipment in commerce of *any* goods in the production

2. Queen City Suburban Press, Inc., is the successor to the defendant Western Hills Publishing Company. Answer of defendant Queen City Suburban Press, Inc., paragraph # 4.

of which any employee was employed in violation of the overtime and minimum wage requirements of the Act), there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size. *Mabee, supra,* 327 U.S. at 181–82, 66 S.Ct. at 513.

The Supreme Court held that the Act did apply to the out–of–state business carried on by that defendant newspaper.

The test in *Mabee v. White Plains Publishing Co., supra,* hinges on the "regularity" of the shipments rather than the volume. It is true that the relative number of Western Hills Press copies sent to out–of–state subscribers is small whether compared to the total circulation of just that newspaper, as plaintiff proposes, or to the circulation of all of defendants' papers, as defendant proposes. Still, the evidence indicates that for the past three years defendant has sent the Western Hills Press to about 300 subscribers outside Ohio on a weekly basis. Thus, this Court finds that defendant sends the Western Hills Press to out–of–state subscribers on a regular basis, and not merely in sporadic or occasional amounts. Further, in *Mabee, supra,* the Supreme Court declined to hold that an out–of–state circulation of about 0.5% of the total circulation was so insubstantial as to exempt that defendant from the provisions of the Fair Labor Standards Act. This plaintiff worked almost exclusively for the Western Hills Press for which about 3% of the total circulation was to out–of–state subscribers. Finally, the Western Hills Press is a receptacle for some interstate advertising and interstate news reporting. While in *Mabee, supra,* the Supreme Court did not consider the effect of interstate advertising and news gatherings, the broad definition of "commerce" in Section 3(b) of the Act would seem to embrace both of these activities.[3]

Therefore, it is the holding of this Court that defendant is engaged in interstate

commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.,* in the operation of the Western Hills Press.

Defendant's motion for summary judgment is denied. Plaintiff's cross–motion for partial summary judgment on the limited jurisdictional issue above is granted.

SO ORDERED.

---

**3.** 29 U.S.C. § 203(b) provides:

"Commerce" means trade, commerce, transportation, transmission or communication among the several states or between any state and any place.